UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE CPI AEROSTRUCTURES
STOCKHOLDER DERIVATIVE
LITIGATION.

**REPORT & RECOMMENDATION**
Master File No.
1:20-cv-2092 (ENV) (CLP)[1]

--------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On May 7, 2020, plaintiff Keith Moulton ("Moulton" or "plaintiff") commenced a

derivative action on behalf of CPI Aerostructures, Inc. ("CPI" or the "Company"), alleging

breaches of fiduciary duty and related claims under Section 10(b) of the Securities Exchange Act

of 1934, 15 U.S.C. § 78j, against defendants Douglas McCrosson, Vincent Palazzolo, Terry

Stinson, Carey E. Bond, Janet K. Cooper, Michael Faber, Walter Paulick, Eric Rosenfeld, and

Harvey J. Bazaar (the "Settling Defendants"), by failing to ensure that CPI had sufficient internal

controls over financial reporting (the "Moulton action"). (Moulton Compl.2) On October 26,

2020, Moulton filed an amended complaint against the same defendants, which, among other

things, added a claim for unjust enrichment against defendants McCrosson and Palazzolo.

(Moulton Am. Compl.3 ¶¶ 187–90). On March 19, 2021, the Moulton action was consolidated

with an action brought by Paul Berger (the "Federal Derivative Action"), and Co-Lead

Counsel—The Law Offices of Beth A. Keller, P.C. and Glancy Prongay & Murray LLP—were

---

[1] Unless otherwise stated, citations to ECF documents are citations to the documents filed in No. 20 CV 2092, Moulton et al. v. McCrosson et al. (EDNY).

[2] Citations to "Moulton Compl." refer to the Complaint filed in the Moulton action in EDNY on May 7, 2020. (ECF No. 1).

[3] Citations to "Moulton Am. Compl." refer to the Amended Complaint filed in the Moulton action in EDNY on October 26, 2020. (ECF No. 10).

appointed for the plaintiffs[4] in the Federal Derivative Action.  (ECF No. 21; see also No. 20 CV 5454, ECF No. 16).

On February 14, 2023, this Court issued a Report and Recommendation, granting preliminary approval of the parties' Proposed Settlement and authorizing notice to be sent to CPI shareholders (the "Report and Recommendation" or "R&R").  (ECF No. 30).  The Honorable Eric N. Vitaliano issued an Electronic Order adopting this Court's Report and Recommendation on March 1, 2023 (the "Preliminary Approval Order").  Currently pending before this Court is plaintiffs' motion for final settlement approval ("Motion" or "Mot.").  (ECF No. 34).  For the reasons set forth below, the Court respectfully recommends that the district court grant final approval of the Proposed Settlement.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The full factual background of this litigation is set forth in detail in the Court's February 14, 2023, Report and Recommendation (see R&R at 2–5), and is incorporated by reference herein.  In short, plaintiffs alleged that CPI, a prime supplier to the United States Department of Defense of aircraft parts for fixed wing aircraft and helicopters, adopted the Accounting Standards Codification ("ASC") Topic 606 in January 2018.  (Moulton Am. Compl. ¶¶ 1–2).  In February 2019, however, CPI reported that the financial statements reported in its Form 10-Q for the period ending September 30, 2018, could no longer be relied on due to a billing process error. (Id. ¶¶ 1–4).  Based on the news of the error, CPI's stock price fell by $0.59 per share, causing injury to the Company's shareholders.  (Id. ¶ 61).  Then, in February 2020, the Company revealed that its financial statements for the previous several quarters could not be relied upon due to an error relating to the Company's recognition of revenue from contracts with customers

---

[4] References to "plaintiffs" refer to Keith Moulton and Paul Berger.

under ASC Topic 606.  (Id. ¶ 5).  Consequently, CPI's stock price fell again, this time by $1.80 per share.  (Id. ¶ 91).

These events prompted Mark A. Rodriguez to file a securities class action against CPI and defendants McCrosson and Palazzolo on February 24, 2020, which was later amended to add as defendants Canaccord Genuity LLC and B. Riley FBR.  See Rodriguez v. CPI Aerostructures, Inc. (the "Rodriguez Action"), No. 20 CV 982 (ENV) (CLP) (E.D.N.Y.).  One day after the filing of the Rodriguez Action, on February 25, 2020, Russell Garrett filed a similar suit against CPI and defendants McCrosson and Palazzolo, alleging violations of the securities laws.  See Garrett v. CPI Aerostructures, Inc. (the "Garrett Action"), No. 20 CV 1026 (ENV) (CLP) (E.D.N.Y.).  The two suits were later consolidated into one action (the "Securities Class Action").  (See No. 20 CV 982, ECF No. 24).  While these cases were being filed, various actions were filed in state court, and then in federal court (see R&R at 4), leading to the current consolidated Federal Derivative Action.  In April 2021, Keith Moulton and Robert Garfield filed a request for corporate records related to CPI's compliance with anti-discrimination laws (the "2021 Inspection Demand").  (Id. at 5)

In May 2021, the parties participated in a mediation before John R. Van Winkle of Van Winkle Batten Dispute Resolution, and ultimately reached an agreement in principle to settle the Federal Derivative Action, the State Court Actions, and the 2021 Inspection Demand.  (Id. at 5).  The terms of the Proposed Settlement are set forth in the Stipulation of Settlement (ECF No. 25-1) attached to the Declaration of Matthew Houston, Esq., counsel for Plaintiffs ("Houston Decl.") (ECF No. 25).  On March 1, 2023, the district court adopted this Court's Report and Recommendation, granting preliminary approval of the Proposed Settlement.  Notice was then disseminated to current shareholders of CPI in accordance with the Preliminary Approval Order,

and on June 7, 2023, this Court held a hearing to address final approval of the Proposed

Settlement.  (See Minute Entry, dated June 8, 2023).  No objections were filed, and no one

appeared at the hearing to object to the Proposed Settlement.  (Id.)

Accordingly, the Court now considers the plaintiffs' motion for final approval of the

Proposed Settlement, entry of an award of attorneys' fees in the amount of $585,000, expenses of

$8,806.85, service awards to each shareholder in the amount of $1,500, and an Order Approving

Derivative Settlement and Order of Dismissal with Prejudice,[5] releasing all claims that could

have been asserted in Federal Derivative Action and the 2021 Inspection Demand.  (See Mot. at

2; Pls.' Mem.[6] at 1, 33; Pls.' Prop. Order[7] at 2, 13).

DISCUSSION

I.    Legal Standard

Plaintiffs commenced this action pursuant to Rule 23.1 of the Federal Rules of Civil

Procedure, which provides that "[a] derivative action may be settled, voluntarily dismissed, or

compromised only with the court's approval."  Fed. R. Civ. P. 23.1(c).  After preliminarily

certifying a settlement class, a court "then grants or denies final approval of the settlement and

certification of the class."  Patterson v. Premier Constr. Co. Inc., No. 15 CV 662, 2017 WL

122986, at *2 (E.D.N.Y. Jan. 12, 2017).  Particularly in shareholder derivative actions, which are

"notoriously difficult and unpredictable," public policy favors settlement.  Mathes v. Roberts, 85

F.R.D. 710, 713 (S.D.N.Y. 1980); In re Metropolitan Life Derivative Litig., 935 F. Supp. 286,

---

[5] Plaintiffs request that the Court approve the proposed version of these orders, filed on the docket as Exhibits B and C to the Stipulation of Settlement.  (ECF No. 25-1 at 73–77).

[6] Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval, filed May 17, 2023.  (ECF No. 35).

[7] Citations to "Pls.' Prop. Order" refer to the Proposed Report and Recommendation Regarding Plaintiffs' Motion for Final Approval, filed June 14, 2023.  (ECF No. 38-1).

291 (S.D.N.Y. 1996) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983)).

Whether a settlement is fair is a determination within the sound discretion of the court. Caballero v. Senior Health Partners, Inc., No. 16 CV 0326, 2018 WL 6435900, at *2 (E.D.N.Y. Dec. 7, 2018). In considering whether to grant final approval of a settlement, the court must determine whether "the compromise is fair, reasonable, and adequate." Weinberger v. Kendrick, 698 F.2d at 73. "[I]n the context of a derivative action settled on behalf of the class of all shareholders, this requires consideration, in particular, of whether the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation." In re Pfizer Inc. S'holder Derivative Litig., 780 F.Supp.2d 336, 340 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). If "the compromise fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted," In re AOL Time Warner S'holder Derivative Litig., No. 02 CV 6302, 2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006) (internal quotation marks omitted), then final approval should be granted.

In applying these axioms, courts look to cases and standards under Rule 23(e) of the Federal Rules of Civil Procedure for guidance by analogy. Accord In re OSI Sys., Inc. Derivative Litig., No. 14 CV 2910, 2017 WL 5634607, at *1 (C.D. Cal. Jan. 24, 2017) (explaining that "[t]he Court takes as instructive case law governing preliminary approval of class action settlements under Rule 23(e)"). Among other things, courts "must consider whether the settlement was procedurally fair . . . and whether the substantive terms of the settlement 'are in the interests of the company and its shareholders relative to the likely rewards of litigation.'"

Scott v. Wei, No. 15 CV 9691, 2021 WL 1910657, at *1 (S.D.N.Y. May 12, 2021) (quoting In re Pfizer Inc. S'holder Derivative Litig., 780 F. Supp. 2d at 340 (S.D.N.Y. 2011)).

II.   Analysis

A.   Procedural Fairness

In its review of the proposed derivative settlement, a court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *3 (internal quotation marks omitted) (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)); see also In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986) (explaining that "[i]n approving the proposed settlement of a class action, a district court has the fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately").

Here, the indicia of procedural fairness are demonstrated by the fact that the Settlement was the product of extensive arm's length negotiations by experienced Lead Counsel, assisted by counsel in the various state actions, who thoroughly investigated the facts and the law and considered the risks of a further prosecution.  If, as here, the parties engage in discovery prior to negotiations, that suggests the negotiations were legitimate and representation was effective.  See Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017) (noting "the presumption of fairness when a class settlement has been reached after 'arm's-length negotiations between experienced, capable counsel after meaningful discovery'" (quoting Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 116 (2d Cir. ), cert. denied, 544 U.S. 1044 (2005))).

6

As noted in this Court's Report and Recommendation regarding preliminary approval, counsel reviewed various records, including Company press releases, recorded public statements, SEC filings and securities analysts' reports, business and media reports, filings in the related Securities Class Action, internal documents produced pursuant to the books and records demands, legal research and analysis, a compilation of data bearing on executive compensation and the compensation of CPI's Board, possibly subject to clawback, consultation with an expert relating to accounting issues, and review of the information exchanged during the course of settlement negotiations.  (R&R at 8 (citing Houston Decl. ¶ 5)).  The breadth of counsel's research into the facts and legal claims underlying this action suggests that the negotiation process was engaged in meaningfully and faithfully to the shareholders' interests.

Moreover, as also noted in this Court's earlier Report, Lead Counsel has had "significant experience" in derivative litigation, serving as lead counsel or co-lead counsel in numerous securities class actions and derivative actions and have negotiated derivative settlements in the past.  (Id. at 9 (citing Houston Decl. ¶ 4)).  Counsel have asserted that the terms of the Proposed Settlement are "fair, reasonable, and adequate, and in the best interests of the Company."  (Id. (quoting Houston Decl. ¶ 4)).  In addition to Lead Counsel, plaintiffs Moulton and Berger themselves appear to be adequate representatives of similarly situated shareholders.

Under Rule 23.1(a), "[t]he 'fair and adequate representative' inquiry focuses on the degree of certainty that a derivative plaintiff will vigorously prosecute the corporate claim in the interest of the minority stockholders."  Cohen v. Bloch, 507 F. Supp. 321, 324 (S.D.N.Y. 1980).  Here, plaintiffs Moulton and Berger both were shareholders of CPI throughout the relevant time

period from 2018 to 2020,[8] and vigorously pursued and participated in this litigation.  (See R&R at 10).

Finally, the Court notes that the parties attended multiple formal mediation sessions before an experienced mediator and they participated in dozens of negotiation exchanges over the course of approximately a year, bolstering the presumption of fairness.  (Id.)  The fact that the Proposed Settlement was the result of a formal process, aided by a neutral mediator's involvement, demonstrate the "hallmarks of a non-collusive, arm's length settlement process." In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015); cf. D'Amato v. Deustche Bank, 236 F.3d at 85 (explaining "[t]his Court has noted that a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In light of the bona fide mediation and negotiation process in which the parties engaged, the Court respectfully recommends a finding that the Proposed Settlement should be approved as procedurally fair and the result of an arm's-length negotiation process rather than collusion.

B.    Substantive Fairness

In evaluating the substantive fairness of the Proposed Settlement, the Court considers "(1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to proposed settlement."  In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d at 281 (quoting In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *3); see also In re Metropolitan Life Derivative Litig., 935 F. Supp. at 292 (adding "the quality of the

---

[8] Plaintiff Berger has continuously owned CPI stock since 2008.  (ECF No. 28-1 ¶ 3).  Plaintiff Moulton has continuously owned CPI stock since December 2017.  (ECF No. 28-2 ¶ 3).

negotiating process and views of counsel"); accord City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

      1.      Reasonableness of Benefits

Courts recognize that in the context of a derivative action, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d at 281 (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)). The "principal factor" is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1311 (3d Cir. 1993). "Moreover, in derivative actions where the harm done is to the corporation, a monetary benefit is not necessary for settlement approval." Id.

As set forth in this Court's earlier Report and Recommendation, the Proposed Settlement in this case consists of a number of corporate governance reforms that relate directly to the claims in the Federal Derivative Action and were designed to respond to the Federal Derivative Action, the State Court Actions, and the 2021 Inspection Demand. (See R&R at 12 & n.13; Pls.' Mem. at 11, 17). The corporate reforms set out in the Proposed Settlement are reasonable because they are calibrated to remedy those harms complained of. See In re AOL Time Warner S'holder Derivative Litig., 2006 WL 2572114, at *4 (finding a derivative settlement conferred substantial benefits where "more importantly, the governance and compliance provisions memorialized in the Settlement directly address the failure of internal controls that precipitated the instant lawsuits").

The Proposed Settlement also includes certain reforms to train, educate, evaluate, and improve self-assessment and reporting by the Company's directors. (Proposed Settlement

¶ 3.1(A)).[9]  In addition, the Proposed Settlement provides for the appointment of a new, independent Board member who meets certain specified diversity objectives (id. ¶ 3.3), the retention of an outside consultant to review the Company's anti-discrimination policies and develop diversity objectives[10] (id. ¶ 3.6), and an outside consultant to ensure compliance with ASC 606 (id. ¶ 3.1(B)).  As part of the Proposed Settlement, there will also be changes in the duties and responsibilities of the Audit Committee, which will monitor new accounting pronouncements, discuss technical and regulatory matters, conduct an annual assessment of the outside auditors, and work with outside consultants to ensure compliance with various GAAP and various guidelines.  (Id. ¶ 3.2).  The Proposed Settlement also requires the Company to maintain written policies and procedures to protect whistleblowers.  (Id. ¶ 3.8).  In the Proposed Settlement, the Company acknowledges that the Federal Derivative Action was a material factor in the Company's decision to hire a new independent outside auditor, as well as a new Board member, new controller, and new CFO.[11]  (Id. ¶¶ 3.1 (B), (C), (D); id. ¶ 3.4).

Finally, the Proposed Settlement also provides for a release of all known or unknown claims, including claims brought by plaintiffs, CPI, or any other purported CPI Shareholder that were or could have been asserted in any of the Federal actions, including the Wurst and Woodward actions commenced in state court.[12]  In essence, the Proposed Settlement only releases those claims that relate to, arise out of, or could have been raised as part of the Federal Derivative Action or the State Court Actions, which suggests the release is proper.  See

---

[9] Citations to specific paragraphs of the Proposed Settlement refer to the numbered provisions found within Section V thereof.

[10] The 2021 Inspection Demand was commenced "to investigate possible breaches of fiduciary duty relating to CPI's compliance with antidiscrimination laws."  (Proposed Settlement at 2).  Such diversity initiatives appear to have been crafted in response to the 2021 Inspection Demand.

[11] The Company also credits the State Court Actions as being substantial or material factors in the hiring of a new independent outside auditor.  (See Proposed Settlement ¶ 3.4).

[12] For additional detail on the Wurst and Woodward actions, see R&R at 4.

<u>Employees Ret. Sys. of St. Louis v. Jones</u>, No. 20 CV 4813, 2022 WL 14160253, at *6 (S.D. Ohio Aug. 23, 2022) (approving a derivative shareholder settlement where "[t]he parties properly have limited their release to claims that are 'based on, arise from or relate to the allegations . . . set forth in the Complaints'"); <u>see also</u> <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d at 106 (in the context of a Rule 23(b)(2) and 23(b)(3) class action, explaining that "[p]laintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines . . . [, which] allow plaintiffs to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement").

All of these provisions together confer substantial benefits to both CPI and its shareholders, as recognized by the current CPI Board, including the resolution of the Federal Derivative Action.[13]  <u>See</u> <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 73 (2d Cir. 1983) (noting that "[t]here are weighty justifications, such as the reduction of litigation and related expenses, for the general public policy favoring the settlement of litigation"); <u>Velez v. Norvartis Pharm. Corp.</u>, No. 04 Civ. 9194, 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 10, 2010) (noting "[a]s federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty").

The fact that CPI's Board recognizes the substantial benefits conferred on the Company and its shareholders, including the Corporate Governance Reforms, and the fact that a global resolution will remove uncertainty in the market regarding the Company's exposure, weighs heavily in favor of final approval.

---

[13] According to the Proposed Settlement, as of the effective date of the Settlement Agreement, the parties will no longer pursue the State Court Actions and the 2021 Inspection Demand, and within five days of the approval of the Proposed Settlement, the plaintiffs in the State Court Actions will move to dismiss those actions with prejudice and without fees or costs.  (Proposed Settlement § IV; <u>id</u> ¶¶ 4.4, 4.5).

2.     Likelihood of Success and Risks of Litigation

In analyzing the risks of continued litigation and the likelihood of plaintiffs' ultimate success, "[t]he doctrine of demand futility,[14] the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs."  In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d at 281–82; see also Jiminian v. Seabrook, 760 F. App'x 38, 41 (2d Cir. 2019) (summary order) (explaining that "[b]ecause derivative actions inherently interfere with the managerial discretion of corporate boards, New York has 'historically been reluctant to permit shareholder derivative suits, noting that the power of courts to direct the management of a corporation's affairs should be exercised with restraint'" (quoting Marx v. Akers, 88 N.Y.2d 189, 194, 666 N.E.2d 1034, 1037, 644 N.Y.S.2d 121, 124 (1996))).

Since this motion for settlement approval was filed prior to defendants' filing an Answer or response to the Complaints, and there has been no other substantive motion practice, plaintiffs' theories of standing and liability have not yet been tested.  As plaintiffs note in their Memorandum of Law, despite confidence in the merit of their claims, continued litigation would be lengthy, expensive and full of risk, see, e.g., Wandel v. Dimon, 135 A.D.3d 515 (1st Dep't 2016) (explaining that a derivative claim based on a failure of oversight "is possibly the most difficult theory in corporation law"), and they would have to overcome motions to dismiss challenging the sufficiency of their allegations relating to demand futility. (Pls.' Mem. at 18–19 (citing In re Omnicrom Grp. Inc. S'holder Deriv. Litig., 43 A.D.3d 766, 768 (1st Dep't 2007)).

---

[14] The doctrine of demand futility refers to the narrow exception to the precondition to filing a derivative suit that requires a "shareholder [to] demonstrate that the corporation itself had refused to proceed after suitable demand." Jiminian v. Seabrook, 760 F. App'x 38, 41–42 (2d Cir. 2019) (summary order) (quoting Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004)).  To satisfy the exception, a plaintiff must show that making a demand on the corporation itself prior to suit would have been a futile act.  See id. at 41–42

Assuming plaintiffs were able to withstand a motion to dismiss, they would also likely be faced with costly discovery and expert expenses, as well as a motion for summary judgment predicated on the business judgment rule.  (Id. at 19).  Finally, proving damages would also involve a "complicated and uncertain process," see In re Lloyd's Am. Tr. Fund Litig., No. 96 CV 1262, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002), and inevitably there would be appeals even if plaintiffs were successful in achieving a jury verdict in their favor.  Moreover, defendants continue to deny any liability or wrongdoing, further reinforcing the conclusion that early settlement here offers substantial benefits to the Company and its shareholders.  (Proposed Settlement § III).

Given the significant risks posed by continuing with this litigation, as noted above, the Proposed Settlement offers the corporation and shareholders substantial benefits that they might not otherwise obtain should the litigation continue.  This is particularly true in light of the relatively early stage of this litigation, as further litigation would likely be protracted and costly. See In re Metropolitan Life Derivative Litig., 935 F. Supp. at 293–94 (finding settlement, rather than litigation, would be in the best interest of all parties where the "consolidated federal case is already substantially more than two years old," "[f]our state court cases are also pending," defendants' motion to dismiss was still pending, and "the deposition phase of the case would be extremely expensive and time-consuming").

### 3.    Shareholder Reaction

Another factor supporting approval of the Proposed Settlement in this case is the reaction of the class.  City of Detroit v. Grinnell Corp., 495 F.2d at 463.  Pursuant to court order, Notice of the Proposed Settlement was disseminated to CPI's shareholders, with the date of May 24, 2023, as the deadline for objections.  As of the date of the final hearing before this Court, no shareholders had lodged an objection, suggesting that they are satisfied with the Proposed

13

Settlement.  According to plaintiffs, CPI has thousands of shareholders, including institutional investors, making the absence of any objections particularly significant.  (Pls.' Mem. at 20 (citing In re Citigroup Inc. Bond Litig., 296 F.R.D. 147, 156 (S.D.N.Y. 2013)).

Thus, the absence of any shareholder objections weighs heavily in favor of final approval of the Proposed Settlement.

### 4.    Substantive Fairness Summation

As in this Court's prior Report, having reviewed the unopposed Motion, the terms of the Proposed Settlement, and the supporting declarations and documents, the Court finds that plaintiffs have satisfied the requirements of Rule 23.1 and made the requisite showing that the Proposed Settlement will confer significant and material benefits on the Company and on its shareholders.  This Court further finds that the Proposed Settlement appears to be the product of informed, non-collusive negotiations, by experienced counsel.  After holding the fairness hearing and receiving no objections from shareholders, the Court therefore respectfully recommends that the Proposed Settlement be approved as fair, reasonable, and adequate.

### C.    Reasonableness of Attorney's Fees, Expenses, and Service Awards

Counsel who successfully prosecute a shareholder derivative action that generates substantial benefits for the corporation are entitled to an award of attorney's fees commensurate with the risks and benefits of the action.  See In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d at 283; Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 54 F.3d 69, 71 (2d Cir. 1995); accord In re Rambus Inc. Derivative Litig., No. 06 CV 3513, 2009 WL 166689 at *3 (N.D. Cal. Jan. 20, 2009) (explaining that after the Supreme Court's decision in Mills v. Electric Auto-Lite Co., 396 U.S. 375 (1970), "courts consistently have approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in significant corporate governance reforms but no monetary relief").  "When assessing

14

whether attorneys' fees are appropriate, courts consider the so-called *Goldberger* factors: (i) the benefit recovered in relation to the settlement; (ii) the magnitude and complexities of the litigation; (iii) the litigation risk; (iv) the quality of representation; (v) public policy considerations; and (vi) the time and labor spent." Scott v. Wei, 2021 WL 1910657, at *3 (citing Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000)).

In negotiating the Proposed Settlement, the parties reached an agreement—which was approved by the Board—of an award of $585,000 in attorney's fees to Plaintiffs' Counsel.[15] (Proposed Settlement ¶ 6.1).  This attorney's fee award was arrived at after negotiating the material substantive terms of the Proposed Settlement.  (Id.; see also Pls.' Mem. at 24).

In calculating attorney's fees, "a factor in assessing the amount of the fee to be awarded is the degree to which plaintiffs' attorneys' services benefitted the corporation, and that such benefit must therefore be weighed and evaluated, even if unquantifiable." Seinfeld v. Robinson, 277 A.D.2d 24, 24, 715 N.Y.S.2d 404, 405 (1st Dep't 2000).  Here, the fee award was the result of an evaluation of the substantial benefits that the settlement brought, and a process in which "the Mediator issued a 'double-blind' Mediator's proposal, which ultimately was accepted by both plaintiffs and defendants."  (Pls.' Mem. at 22–24 ).  Based on a review of precedential cases in this Circuit, this Court concludes that the proposed award of attorneys' fees is well within the "range of reasonableness."  (See id. at 26–29 (collecting cases)).

As for the lodestar cross-check, Plaintiffs' Counsel represents that "the lodestar exceeds the proposed Fee and Expense Amount," so there is no "windfall" to Plaintiffs' Counsel here. (Id. at 32).  Specifically, counsel represents that they devoted a total of 1,304.45 hours over a

---

[15] The term "Plaintiffs' Counsel" refers not only to the Lead Counsel noted above, but also includes the Paskowitz Law Firm P.C., Shuman, Glenn & Stecker, Pomerantz LLP, and Bragar Eagel & Squire, P.C., who represented other shareholder plaintiffs in the Federal Derivative Action, the State Court Actions, and the various inspection and/or books and records demands.  (See ECF No. 28).

three-year period, amounting to a lodestar of $1,029,368.75, which is significantly higher than the requested award.  (Id. at 32).

Counsel also requests an award of $8,806.85 in expenses incurred during the action. (Id. at 33).  Such awards are permissible and routine in this context.  See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (holding that "[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients").  Here, counsel represents that these expenses were necessary and would have been billed in non-contingency matters, and thus, are subject to reimbursement. (Pls.' Mem. at 33).

From the fee award, Plaintiffs' Counsel also seeks minimal service awards of $1,500 each to the "Settling Plaintiffs"—"Paul Berger, Keith Moulton, Robert Clancy, Karen Leslie Wurst, Robert Garfied, and Dan Woodyard."  (Proposed Settlement ¶ 6.3).  As set forth in this Court's Order granting preliminary approval of the Settlement, the Settling Plaintiffs initiated the Federal Derivative Action, the State Court Actions, and the books and records demands, took on leadership roles and enlisted the assistance of experienced counsel to further CPI's interests. (R&R at 20).  Moreover, because the amounts will be paid for out of the larger attorneys' fee award, these individual awards will have no impact on the rest of the settlement.  (Id. (citing Scott v. Wei, 2021 WL 1910657, at *4 (approving an incentive award for the main plaintiff in the amount of $1,500 because the amount was minimal, the plaintiff had "undertaken a leadership role and devoted time and energy to this litigation," and the award was to be paid out of the attorney's fees and would "therefore not impact the rest of the settlement")).

16

In light of the considerable time and effort spent on this two-year old controversy, the significant benefits conferred by the Proposed Settlement, and the fact that Plaintiffs' Counsel seek a negative lodestar multiplier, the Court respectfully recommends that the attorney's fee award and the awards to the Settling Plaintiffs be approved.

<u>CONCLUSION</u>

In summary, the Court respectfully recommends that the district court grant final approval of the Proposed Settlement, including the attorneys' fees, expenses, and service awards to the Settling Plaintiffs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Fed. R. Civ. P. 72(b)(2)</u>; <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        October 27, 2023

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

17